

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

Ashley Brooks, Brian Sharp, and Rachel Leblanc,     **PLAINTIFFS**
on behalf of themselves and all others similarly
situated,

v.     No. 5:16-cv-31 KS-MTP

Illusions, Inc., and Thomas Walsh,     **DEFENDANTS**

(JURY TRIAL DEMANDED)

## COMPLAINT

This is a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, brought by dancers, wait staff, bartenders, bouncers, and DJs against the strip club where they work. The club has consistently and willfully refused to pay minimum wage and overtime, and has taken the tips of employees through a system of charges, fines, and fees. In support thereof, COME NOW THE PLAINTIFFS, on behalf of themselves and all others similarly situated, by and through their attorney, and allege as follows:

### JURISDICTION, VENUE, JURY TRIAL

1. Jurisdiction is proper in this court under 28 U.S.C. § 1331 because this claim arises under the FLSA, 29 U.S.C. § 216.

2. Venue is proper in this court under 28 U.S.C. § 1391 because the strip club at issue is in Wilkinson County, Mississippi.

3. Plaintiff hereby demands trial by jury on all issues so triable.

## PLAINTIFFS

4. Plaintiff Ashley Brooks is an adult resident of Woodville, Mississippi, and a former employee of the Defendants.

5. Plaintiff Brooks is a plaintiff representative of current and former wait staff and bartenders in this collective action under the FLSA.

6. The collective group of wait staff is defined as "all persons who worked as 'waitresses' or 'waiters' at Illusions, Inc. at any time between three years prior to the filing of this Complaint and the entry of judgment in this case."

7. The collective group of bartenders is defined as "all persons who worked as 'bartenders' at Illusions, Inc. at any time between three years prior to the filing of this Complaint and the entry of judgment in this case."

8. Plaintiff Brian Sharp is an adult resident of Woodville, Mississippi and a former employee of the Defendants.

9. Plaintiff Sharp is a plaintiff representative of current and former DJs and bouncers in this collective action under the FLSA.

10. The collective group of bouncers is defined as "all persons who worked as 'bouncers' or 'security' or 'head of security' at Illusions, Inc., at any time between three years prior to the filing of this Complaint and the entry of judgment in this case."

11. The collective group of DJs is defined as "all persons who worked as 'DJs' or 'disc

jockeys' at Illusions, Inc. at any time between three years prior to the filing of this Complaint and the entry of judgment in this case."

12. Plaintiff Rachel Leblanc is an adult resident of Baton Rouge, Louisiana, and a former employee of the Defendants.

13. Plaintiff Leblanc is a plaintiff representative of current and former dancers in this collective action under the FLSA.

14. The collective group of dancers is defined as "all persons who worked as 'dancers' or 'entertainers' or 'strippers' at Illusions, Inc. at any time between three years prior to the filing of this Complaint and the entry of judgment in this case."

## DEFENDANTS

15. Defendant Illusions, Inc., is a Mississippi corporation operating a strip club which, without irony, is doing business as "Illusions Gentlemen's Club."

16. Illusions describes itself on its Facebook page by the slogan "We Put the 'Wood' in Woodville."

17. Illusions has its place of business of at 1500 U.S. Hyw 61, Woodville, MS 39669.

18. Defendant Thomas Walsh is the Director, President, and Registered Agent of Illusions, Inc., and runs its day-to-day operations.

19. Both Defendants can be served at Walsh's address registered with the Mississippi Secretary of State at 1711 Hwy 563, Woodville, MS 39669.

20. Defendant Illusions is a "person" and "employer" as defined by Section 3(a) &

(d) of the FLSA.

21. Illusions has two or more employees and more than $500,000 in gross volume under Section 3(s)(1)(A) of the FLSA.

22. Defendant Walsh is a "person" as defined in Section 3(a) of the FLSA, and was acting in the interest of Illusions in relation to Plaintiffs in this case.

23. Both Defendants are employers under Section 3(d) in commerce under Section 3(s), and each are jointly and severally subject to the provisions of the FLSA.

## INTERSTATE COMMERCE

24. Illusions operates in the southwestern-most corner of Mississippi, advertising on Facebook that it is "7 miles past the state line" with Louisiana. The club can be reached from Louisiana in less than ten minutes of driving on U.S. Highway 61.

25. The club is patronized by citizens of Louisiana on a nightly basis, who cross the border to visit the club.

26. Employees of the club also live on both sides of the state line, and freely cross it for employment.

27. Employees regularly run credit and bank cards incorporated through states like South Dakota and Delaware in order to provide cash to patrons, who then spend the interstate cash with other employees.

28. Every individual employed by the club is covered by the FLSA because he or she is engaged in interstate commerce every workweek.

## PAY AND WORK POLICIES

29. The club's official hours of operation are from 7 pm to 4 am nightly on Friday and Saturday, and 5 pm to 1 am on Monday through Thursday.

30. The club's business is quasi-seasonal, peaking during hunting seasons – particularly deer season – and tailing off significantly during other times.

### Waitresses & Bartenders

31. Defendants employ waitresses and bartenders, whose job is to serve patrons with food and drink.

32. Plaintiff Ashley Brooks worked as both a waitress and a bartender for Defendants for well over three years, ending on or about February 26, 2016.

33. Waitresses and bartenders typically begin working before the club opens.

34. They work straight through the night and remain at work after hours to clean up and close up.

35. They can work as long as 11 hours in a shift.

36. Defendants did not track the hours waitresses or bartenders actually worked.

37. Defendants routinely issue pay stubs for waitresses and bartenders reporting that they work far fewer hours than they actually work.

38. For example, for the week ending January 31, 2016, Defendants issued a pay stub stating that Plaintiff Brooks worked two hours as a waitress that week, and that she was paid at the rate of $20 per hour for this work.

39. The same pay stub also stated that Plaintiff Brooks worked two hours as a bartender, and that she was paid at the rate of $40 per hour for this work.

40. In total, this pay stub reflected $120 in weekly pay for four hours of work.

41. In fact, Brooks worked two full shifts as a waitress, and two full shifts as a bartender.

42. Defendants never paid overtime for weeks in which more than 40 hours were worked.

43. Brooks's January 31, 2016, pay stub is representative of all waitresses's and bartenders's pay stubs over the last three years (and more), which routinely record approximately 10% or less of the hours actually worked.

44. Defendants require waitresses to share tips with bartenders.

45. Defendants do not give specific notice of the terms of the tip pool.

46. In practice, bartenders demand different amounts in shared tips from night to night and from bartender to bartender. There is no fixed percentage, rate, or formula by which tips are shared.

47. Defendants do not record the amount of tips earned or shared.

48. Defendants do not give notice of the terms of any potential tip credit under the FLSA.

49. In the off-season, waitresses and bartenders often take home as little as $20 each in tips per shift.

50. In such weeks, a waitress may take home as little as $40 in waitress pay (tips and hourly together) covering up to 11 hours of work in a shift.

51. Similarly, a bartender may take home as little as $60 in bartender pay (tips and hourly together) covering up to 11 hours of work in a shift.

52. Defendants have never supplemented pay to make up for a shortfall in tips, regardless of how little in tips waitresses and bartenders make in a given week.

53. Defendants failed to keep relevant records regarding waitresses and bartenders as required by 29 CFR Part 516, and also kept deliberately false records.

**Bouncers & DJs**

54. Defendants employ Bouncers to provide security at the club.

55. Defendants employ DJs to provide music and atmosphere at the club.

56. Plaintiff Brian Sharp worked as both the head bouncer and a DJ for Defendants for well over three years.

57. Bouncers and Djs arrive before the club opens, and work straight through the night and remain at work after hours to clean up and close up.

58. They can work as long as 11 hours in a shift.

59. Defendants did not track the hours bouncers and DJs actually worked.

60. Defendants routinely issue pay stubs for bouncers and DJs reporting that they work far fewer hours than they actually work.

61. For example, Defendants issued pay stubs stating that Plaintiff Sharp worked

two hours as head of security, and that he was paid at the rate of $60 per hour for this work.

62. Defendants also issued pay stubs stating that Plaintiff Sharp worked two hours as a DJ, and that he was paid at the rate of $40 per hour for this work.

63. In fact, Plaintiff sharp would have worked two full shifts as a DJ and two full shifts as head of security.

64. Defendants never paid overtime for weeks in which more than 40 hours were worked.

65. Defendants required dancers to pay additional money to DJs, generally $10 per night, plus more as tip if they desire.

66. Defendants do not record the amount paid to DJs by dancers.

67. Defendants do not give notice of the terms of any potential tip credit under the FLSA.

68. Defendants never supplement pay to make up for a shortfall in tips, regardless of how little in tips or pay from dancers DJs actually take home in a given week.

69. Defendants failed to keep relevant records regarding bouncers and DJs as required by 29 CFR Part 516, and also kept deliberately false records.

**Dancers**

70. Dancers provide the primary entertainment at the club, mixing with patrons, giving private lap dances, and doing dance routines on stage.

71. Rachel Leblanc – operating under the stage name "Star" - was employed as a dancer by Defendants for more than twelve (12) years, from March 2003 until October 2015. She is representative of the class of dancers.

72. Dancers are paid zero dollars ($0) in hourly wages.

73. Dancers make all of their money exclusively from patron "tips" and fees.

74. Dancers are employees of the Defendants under the FLSA.

75. The economic reality is that the dancers are not in business for themselves but are dependent upon the employment of Defendants.

### (A) The Defendants closely control the work.

76. Dancers are required to stay at work until the close of business, and must remain on the premises until all patrons have left.

77. Dancers are prohibited from sleeping in a local hotel after their shift.

78. The Defendants prescribe the rate dancers must charge patrons for lap dances. Dancers must charge $50 for a one-song lap dance.

79. Dancers must pay out $10 per one-song lap dance to the Defendants.

80. The Defendants require dancers to give all lap dances on Tuesdays at a "two-for-one" price.

81. On Tuesdays, dancers must pay out $20 per-two-song lap dance to the Defendants.

82. The Defendants prescribe the rate dancers must pay DJs to accompany their

stripping routines - $10 per night on weekdays and $20 per night on weekends, plus tips.

83. Bachelor parties paid Defendants approximately $75 for special treatment by the dancers, who were not paid for it.

84. The Defendants charge dancers a "house fee" for every night they work, ranging from $35 to $75.

85. The house fee is structured to punish dancers for tardiness, as the amount of the payout increases dramatically the later the dancer arrives for her shift – up to $150.

86. Defendants levy "fines" against the dancers for a wide variety of offenses, up to at least $1,000.

87. Defendants have levied a $500 fine against Ms. Leblanc because she turned down a request by a patron for a lap dance.

88. Defendants then levied an additional fine against Ms. Leblanc because she cursed at Defendant Walsh when he gave her the prior $500 fine.

89. Defendants have levied a $100 fine against Ms. Leblanc when she was a few seconds late to a stage call.

90. Defendants have levied multiple $100 fines against Ms. Leblanc on occasions when she did not wear a garter belt.

91. Dancer costumes must be approved by Defendants, who sometimes instructed

dancers not to wear certain costumes.

92. Dancers were at all times required to wear high heels.

93. Defendants regulate the content of routines.

94. Defendants Facebook page advertises that it is an "All nude club."

95. Defendants have instructed dancers – and told patrons – that the dancer must get completely nude whenever at least $20 in tips have been placed on the stage.

### (B) The relative investments of Defendants far exceed that of dancers.

96. The dancers' investment in the work is limited to her costumes, which are inexpensive.

97. Defendants own and control the land, the parking lot, the building containing the club, the alcohol license, he inventory of beverages and refreshments, and fixtures such as stage, lights, music and sound equipment.

98. Collectively, this represents a very significant investment by Defendants.

### (C) The Defendants exercise control over the dancers' opportunity for profit and loss.

99. Through advertising, choice of location, determination of business hours, maintenance of facilities, and the inventory of food and beverages, the Defendants exercise significant control over the determinants of customer volume.

100.     This includes providing quality services from bartenders, bouncers,

waiters, and DJs, which attract customers.

101.    For example, Google reviewer "Slim Tweezy" cited the following as among the reasons for his favorable review: "Bouncers are friendly and waitresses bring drinks quickly. No hard alcohol sold here BUT you can actually bring in your own bottle. I've never seen a fight here unlike most clubs. Lap dances and VIP prices aren't outrageous. It's a decent place if you're willing to make the long drive from Baton Rouge." These features are controlled solely by the club.

102.    The club engages in extensive marketing. This includes Facebook postings and ads showing pictures of the dancers – including their stage names – as well as pictures of DJs, bartenders and other employees, in an effort to entice patrons. The club sells marketing merchandise, such as T-Shirts emblazoned with a high-heeled leg and the slogan "We Put The Wood in Woodville."

### (D) Little skill or initiative is required of dancers.

103.    Stripping involves the removal of clothes in rhythm to music.

104.    Many of the dancers did not have any prior experience before coming to work for Illusions.

105.    The club states on its Facebook page that "We welcome first time dancers and we will work with you to make you successful."

106.    When a new dancer without any experience is hired by the club, no

training is provided and the dancer is able to begin working right away.

107. A dancer's "initiative" is essentially limited to showing up to work.

### (E) The relationship between Defendants and dancers is permanent, and more generally characteristic of employee-employer relationships

108. Plaintiff Rachel Leblanc worked for Defendants for 12 years.

109. Ten or more dancers during that time have worked for over a year at a stretch.

110. On their public billboard and on their Facebook page, Defendants advertise that they are "NOW HIRING DANCERS GIRLS."

111. Dancers must apply for the job.

112. Dancers generally do not work at any other club while employed by Defendants.

113. Dancers must fill out identification forms and provide a copy of identification cards to maintain their employment with Defendants.

## CAUSES OF ACTION

### COUNT 1: Fair Labor Standards Act violations regarding wait staff

114. The wait staff Plaintiffs incorporate all allegations set forth in all other sections of this complaint.

115. The wait staff Plaintiffs are entitled to be compensated at a rate of at least $7.25 for every hour worked under 29 U.S.C. § 206.

116. Under 29 U.S.C. § 207, overtime must be paid in weeks where more than 40 hours are worked.

117. Defendants misrepresented and misreported the hours worked by Plaintiffs on official time records.

118. Defendants failed to pay minimum wages and overtime to wait staff as required by the FLSA.

119. Defendants misappropriated tips paid to wait staff through an unlawful tip pooling arrangement, without legally effective notice or terms.

120. Defendants did not meet the relevant recordkeeping, notice, and other requirements necessary to avail itself of the "tip credit" provisions of the FLSA.

121. Defendants violations were willful within the meaning of 29 U.S.C. § 255.

122. Wait staff Plaintiffs seek the full remedies provided by 29 U.S.C. § 216, including damages in the amount of their unpaid wages and tips, liquidated damages, interest as applicable, and such other legal and equitable relief as may be proper.

123. Wait staff Plaintiffs seek recovery of attorney's fees and costs under 29 U.S.C. § 216 and other applicable provisions of law and equity.

### COUNT 2: Fair Labor Standards Act violations regarding bartenders

124. The bartender Plaintiffs incorporate all allegations set forth in all other sections of this complaint.

125. The bartender Plaintiffs are entitled to be compensated at a rate of at least $7.25 for every hour worked under 29 U.S.C. § 206.

126. Under 29 U.S.C. § 207, bartender Plaintiffs must be paid overtime for hours worked over 40 in a work week.

127. Defendants misrepresented and misreported the hours worked by Plaintiffs on official time records.

128. Defendants failed to pay minimum wages and overtime to bartenders as required by the FLSA.

129. Defendants did not meet the relevant recordkeeping, notice, and other requirements necessary to avail itself of the "tip credit" provisions of the FLSA.

130. Defendants violations were willful within the meaning of 29 U.S.C. § 255.

131. Bartender Plaintiffs seek the full remedies provided by 29 U.S.C. § 216, including damages in the amount of their unpaid wages, liquidated damages, interest as applicable, and such other legal and equitable relief as may be proper.

132. Bartender Plaintiffs seek recovery of attorney's fees and costs under 29 U.S.C. § 216 and other applicable provisions of law and equity.

**COUNT 3: Fair Labor Standards Act violations regarding bouncers**

133. The bouncer Plaintiffs incorporate all allegations set forth in all other sections of this complaint.

134. The bouncer Plaintiffs are entitled to be compensated at a rate of at least

$7.25 for every hour worked under 29 U.S.C. § 206.

135. Under 29 U.S.C. § 207, bouncer Plaintiffs must be paid overtime for hours worked in excess of 40 in a workweek.

136. Defendants misrepresented and misreported the hours worked by Plaintiffs on official time records.

137. Defendants failed to pay minimum wages and overtime to bartenders as required by the FLSA.

138. Defendants violations were willful within the meaning of 29 U.S.C. § 255.

139. Bouncer Plaintiffs seek the full remedies provided by 29 U.S.C. § 216, including damages in the amount of their unpaid wages, liquidated damages, interest as applicable, and such other legal and equitable relief as may be proper.

140. Bouncer Plaintiffs seek recovery of attorney's fees and costs under 29 U.S.C. § 216 and other applicable provisions of law and equity.

**COUNT 4: Fair Labor Standards Act violations regarding DJs**

141. The DJ Plaintiffs incorporate all allegations set forth in all other sections of this complaint.

142. The DJ Plaintiffs are entitled to be compensated at a rate of at least $7.25 for every hour worked under 29 U.S.C. § 206.

143. Under 29 U.S.C. § 207, DJ Plaintiffs must be paid overtime for hours worked in excess of 40 in a workweek.

144. Defendants misrepresented and misreported the hours worked by Plaintiffs on official time records.

145. Defendants failed to pay minimum wages and overtime to DJs as required by the FLSA.

146. Defendants did not meet the relevant recordkeeping, notice, and other requirements necessary to avail itself of the "tip credit" provisions of the FLSA.

147. Defendants violations were willful within the meaning of 29 U.S.C. § 255.

148. The DJ Plaintiffs seek the full remedies provided by 29 U.S.C. § 216, including damages in the amount of their unpaid wages, liquidated damages, interest as applicable, and such other legal and equitable relief as may be proper.

149. The DJ Plaintiffs seek recovery of attorney's fees and costs under 29 U.S.C. § 216 and other applicable provisions of law and equity.

**COUNT 5: Fair Labor Standards Act violations regarding dancers**

150. The dancer Plaintiffs incorporate all allegations set forth in all other sections of this complaint.

151. The dancer Plaintiffs are entitled to be compensated at a rate of at least $7.25 for every hour worked under 29 U.S.C. § 206.

152. Defendants paid dancer Plaintiffs zero dollars ($0) in hourly wages.

153. Under 29 U.S.C. § 207, dancer Plaintiffs must be paid overtime for hours worked in excess of 40 in a workweek.

154. Defendants kept no time records.

155. Defendants failed to pay minimum wages and overtime to dancers as required by the FLSA.

156. Defendants misappropriated tips paid to dancers through a series of illegal fees, fines, and kickbacks.

157. Defendants did not meet the relevant recordkeeping, notice, and other requirements necessary to avail itself of the "tip credit" provisions of the FLSA.

158. Defendants violations were willful within the meaning of 29 U.S.C. § 255.

159. The dancer Plaintiffs seek the full remedies provided by 29 U.S.C. § 216, including damages in the amount of their unpaid wages and tips, liquidated damages, interest as applicable, and such other legal and equitable relief as may be proper.

160. The dancer Plaintiffs seek recovery of attorney's fees and costs under 29 U.S.C. § 216 and other applicable provisions of law and equity.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

a. Designate this action as a collective FLSA action;

b. Promptly issue notice pursuant to 29 U.S.C. § 216 to all similarly situated persons, apprising them of this action and providing individual consent forms;

    c. Give leave to add additional plaintiffs or claims as necessary;

    d. Find that the Plaintiffs and their classes are "employees" under the FLSA;

    e. Find that the practices of Defendants described herein violate the FLSA;

    f. Find that the aforesaid violations are willful;

    g. Enter judgment against Defendants for an amount equal to the amount of unpaid wages and unlawfully taken tips;

    h. Enter judgment against Defendants for liquidated damages an additional equal amount as prescribed by statute;

    i. Award interest, costs, and attorney's fees; and

    j. Award all other relief available under the FLSA or otherwise.

The foregoing Complaint is respectfully submitted on behalf of plaintiffs and all similarly situated persons by and through counsel:

_____ Date: 4-19-16

Joel Dillard
JOEL F. DILLARD, PA
405 Tombigbee St.
Jackson, MS 39201
Ph: 601-487-7369
Fax: 601-487-1110
Email: joel@joeldillard.com
M.S. Bar No. 104202
*Counsel for Plaintiffs*